SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| In the Matter of a Member of the State Bar of Arizona, | ) Arizona Supreme Court<br>) No. SB-05-0135-D |
| | ) |
| NANCY E. DEAN,<br>Attorney No. 11198 | ) Disciplinary Commission<br>) No. 02-2290 |
| | ) |
| Respondent. | ) |
| | ) **O P I N I O N** |
| | ) |
| _____ | ) |

Review from the Disciplinary Commission
No. 02-2290

**PETITION FOR REVIEW GRANTED; DISCIPLINE IMPOSED; RECOMMENDATIONS OF THE DISCIPLINARY COMMISSION MODIFIED IN PART AND ADOPTED IN PART**

---

JENNINGS, STROUSS & SALMON, P.L.C.                                    Phoenix
      By   J. Scott Rhodes
Attorneys for Nancy E. Dean

STATE BAR OF ARIZONA
      By   Loren J. Braud, Senior Counsel                             Phoenix
Attorney for the State Bar of Arizona

---

**H U R W I T Z**, Justice

¶1      Justice Jackson once remarked that supreme courts "are not final because we are infallible." _Brown v. Allen_, 344 U.S. 443, 540 (1953) (Jackson, J., concurring).  This case requires this Court to confront the consequences of our fallibility.

**I.**

¶2      In 2001, while serving as a prosecutor in the Apache County Attorney's Office, Nancy E. Dean began a romantic relationship with Michael C. Nelson, who was then an Apache

County Superior Court Judge. At the time, Nelson regularly presided over felony cases; the two therefore kept their relationship a secret. From the time the affair began until Dean resigned from the County Attorney's Office in 2003, she appeared in court before Nelson 485 times.

¶3     In December 2001, in response to a State Bar inquiry, Dean categorically stated, "I am not now nor have I ever been involved in an 'intimate' or 'improper' relationship with the Hon. Michael Nelson." Based on this denial, the State Bar dropped its inquiry. In April 2002, Dean again denied any such relationship and requested that the file in the matter be sealed.

¶4     In early 2003, however, after the State Bar received information from Dean's former spouse, the investigation was re-opened. The Bar eventually filed a disciplinary complaint against Dean alleging conflict of interest and misrepresentation. A hearing officer found that Dean had in fact engaged in the affair and misrepresented the facts to the State Bar. The hearing officer concluded that Dean had violated several Rules of Professional Conduct set forth in Arizona Supreme Court Rule 42: ER 1.7(b) (conflict of interest), ER 1.16(a)(1) (terminating/declining representation), ER 8.1(a) (knowingly making a false statement of fact), ER 8.1(b) (failure to disclose a fact necessary to correct a misapprehension), ER

2

8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation), ER 8.4(d) (conduct prejudicial to the administration of justice), and ER 8.4(f) (knowingly assisting a judge in conduct that is a violation of the Code of Judicial Conduct). As mitigation, the hearing officer found that Dean had no prior disciplinary troubles, was suffering from personal and emotional problems, and was motivated by her desire to protect Nelson. The hearing officer recommended a six-month suspension. In arriving at this recommendation, the hearing officer relied on the fact that Nelson had not been disciplined by the State Bar for his conduct.

¶5      Neither Dean nor the State Bar challenged the hearing officer's findings of fact before the Disciplinary Commission, but both attacked the recommended sanction. Dean argued that the punishment was too severe given her interim rehabilitation and the absence of lawyer discipline of Nelson. The State Bar argued that a lengthier suspension was appropriate.

¶6      The Disciplinary Commission adopted the hearing officer's findings of fact but determined that the appropriate sanction was a one-year suspension retroactive to August 2004,[1]

---

[1]    Under Arizona Supreme Court Rule 65(e), any suspension lengthier than six months requires the lawyer to go through formal reinstatement proceedings. Thus, despite the retroactive suspension recommended by the Commission (the term of which has now expired), there is a significant difference between a one-

3

two years probation, and costs.  One commissioner dissented, finding no warrant to punish Dean this severely in the absence of lawyer discipline to Nelson.

## II.

¶7      Dean has petitioned this Court for review of the Disciplinary Commission's recommendation.  She attacks the one-year suspension on two grounds.  First, she contends that the sanction does not give adequate weight to her rehabilitation efforts.  Second, she argues that neither the Disciplinary Commission nor the hearing officer gave proper consideration to the absence of lawyer discipline to Nelson in determining the length of Dean's suspension.

### A.

¶8      We do not find Dean's first argument persuasive. While remorse and evidence of rehabilitation may be considered as mitigating factors by the Disciplinary Commission, Dean's offenses were quite serious.  As the hearing officer noted, the presumptive sanction for misrepresentation, the most serious offense with which Dean was charged, is disbarment.  *See* American Bar Association, *Standards for Imposing Lawyer Sanctions*, Standard 5.11(b) (1992).  The one-year suspension

_____

year suspension and the six-month suspension recommended by the
hearing officer.

4

recommended by the Commission was, in light of all claimed mitigation, entirely appropriate.

B.

¶9     Dean's second argument, however, is more troublesome. Analysis of this argument requires a summary of what occurred with respect to former Judge Nelson after his affair with Dean came to light.

1.

¶10     The Commission on Judicial Conduct brought charges against Nelson in April 2003.  After a formal hearing, the Commission found that Nelson had violated several Canons of the Code of Judicial Conduct.  The Commission filed its findings with this Court and recommended that Nelson be removed from office and, among other things, ordered to pay the costs and expenses incurred by the Commission associated with the disciplinary hearing.

¶11     After these recommendations were filed, but before we could consider them, Nelson filed a letter of resignation.  We concluded that, in light of the resignation, there was no need to engage in sua sponte review of the recommended sanction of removal.  *In re Nelson*, 207 Ariz. 318, 320 ¶ 3 n.1, 86 P.3d 374, 376 n.1 (2004).  We did, however, grant sua sponte review, pursuant to Commission on Judicial Conduct Rule 29(a), to consider the costs sought by the Commission and, eventually

5

concluded that certain costs were not taxable. *Id*. at 323-24 ¶¶ 21-25, 86 P.3d at 379-80. We remanded the matter to the Commission to calculate a new statement of costs. *Id.* at 325 ¶ 29, 86 P.3d at 381.

¶12 The Commission filed a recalculated statement of costs. On April 22, 2004, we entered an order "approving the Commission on Judicial Conduct's costs in the amount of $2,967.50." Nelson paid the costs and, on May 25, 2004, the executive director of the Commission issued a "Satisfaction of Judgment" under a Supreme Court caption, indicating that it had received $2,967.50 "in full satisfaction of the judgment of the Supreme Court dated April 22, 2004."

**2.**

¶13 On October 29, 2004, the State Bar filed a "Recommendation for Imposition of Lawyer Discipline" against Nelson pursuant to Supreme Court Rule 46(d). Rule 46(d) provides:

> **(d)  Incumbent Judges.** Upon removal or resignation from office of an incumbent judge as the result of a judicial discipline or disability proceeding, the court shall afford the state bar and the judge an opportunity to submit to the court a recommendation whether lawyer discipline or disability status should be imposed based on the record in the judicial proceeding, and if so, the extent thereof.

The State Bar requested that a hearing officer be assigned to recommend appropriate disciplinary action. After receiving

6

briefing, this Court issued an order on February 8, 2005 denying the State Bar's application.

¶14     The State Bar then filed a motion for clarification, posing three questions with respect to our February 8 order:

> a. Does such order indicate the Court found that Respondent is not subject to the provisions of Ariz. R. Sup. Ct. 46(d)?
>
> b. Does such order indicate the Court found that Respondent is instead subject to lawyer discipline pursuant to Ariz. R. Sup. Ct. 46(c)?
>
> c. Does such order indicate the Court found Respondent should not be subject to lawyer discipline in this case under any circumstances?

After receiving briefing, we denied the motion for clarification on March 22, 2005.

## C.

¶15     Neither our February 8 nor our March 22 order explained our denial of the State Bar's motions.  It is fair to note, however, that Rule 46(d), which allows the State Bar to submit a disciplinary recommendation to this Court "[u]pon removal or resignation from office of an incumbent judge as a result of a judicial discipline or disability proceeding," is by its own terms permissive.  Rule 46(d) does not require that the Court act upon that recommendation or foreclose other procedures for seeking discipline of a resigned judge.  Thus, our denial of the State Bar's motions had, on its face, no effect on the ability of the State Bar to seek sanctions against Nelson.

7

¶16     Indeed, Supreme Court Rule 46(c) expressly contemplates that a former judge can be subject to lawyer discipline for conduct occurring while on the bench:

> **(c) Former Judges.**  A former judge who has resumed the status of a lawyer is subject to the jurisdiction of the state bar not only for that person's conduct as a lawyer, but also for misconduct that occurred while serving as a judge that would have been grounds for lawyer discipline . . . .

Given the language of Rule 46(c), at the time we denied the State Bar's motions, we assumed that the Bar could later choose to initiate disciplinary proceedings against Nelson for any misconduct he engaged in while serving as a judge.

¶17     Rule 46(c), however, contains an important caveat. The State Bar has jurisdiction to seek sanctions against a former judge for conduct while on the bench only if "the misconduct was not the subject of a judicial discipline proceeding as to which there has been a final determination by the court."  Ariz. R. Sup. Ct. 46(c).

¶18     Because we had declined sua sponte review of the Commission's recommendation that Nelson be removed from office, at the time we denied the State Bar's motion for clarification we assumed that there had not been a "final determination by the court" with respect to Nelson's judicial discipline proceeding.[2]

---

[2]     We could have granted sua sponte review of the Commission's recommendations to impose a censure on Nelson.  *See Nelson*, 207 Ariz. at 320 ¶ 3 n.1, 86 P.3d at 376 n.1 (citing *In re*

8

We now realize that we were in error in that assumption.

¶19    The term "final determination" is explained in Commission on Judicial Conduct Rule 29(h) as follows:

> **(h) Final determination.** The judgment of the supreme court dismissing the case or imposing a sanction shall be regarded as final and shall be effective on the date the judgment or opinion is filed with the clerk of the court.

In turn, Commission on Judicial Conduct Rule 18(e) describes "the assessment of . . . costs" after a formal hearing as a formal sanction.

¶20    As we have noted above, the Commission sought the assessment of certain costs against Nelson.  In our prior opinion, we specifically found certain costs taxable against Nelson.  *Nelson*, 207 Ariz. at 323-25 ¶¶ 21-29, 86 P.3d at 379-81.  We then issued an order requiring Nelson to pay a specific sum by a specific date.

¶21    The Commission on Judicial Conduct's recommendation in this case (of which we granted sua sponte review) expressly suggested that Nelson be taxed these costs pursuant to Commission Rule 18(e), and both our order granting sua sponte review and our opinion refer expressly to Rule 18(e).  It therefore now seems evident that our award of costs constituted

---

*Fleischman*, 188 Ariz. 106, 113, 933 P.2d 563, 570 (1991)).  Our refusal to do so seemingly confirmed the assumption that we had not made any "final determination" as to judicial discipline after Nelson's resignation.

an imposition of a sanction pursuant to Rule 18(e). Moreover, although our order that Nelson pay certain costs is not formally denominated as a judgment, it was for all intents and purposes a judgment and was subsequently treated as such by this Court and the Commission.[3]

¶22    We have therefore reluctantly concluded that the State Bar cannot pursue lawyer discipline against Nelson under Supreme Court Rule 46(c) because, under Commission Rule 29(h), there has been a "final determination" in the judicial discipline "imposing a sanction" by virtue of our taxation of costs. Our previous assumption that the State Bar was free to pursue lawyer discipline against Nelson was therefore in error.

**D.**

¶23    The result of the prior proceedings is that while Dean has been suspended from the practice of law for her conduct, Nelson has been free to practice law in this State since the date of his resignation. It is this disparity that Dean asks us to consider in reviewing the length of her suspension.

¶24    Consideration of the "sanctions imposed in similar cases is necessary to preserve some degree of proportionality, ensure that the sanction fits the offense, and avoid discipline by whim or caprice." *In re Struthers*, 179 Ariz. 216, 226, 887

---

[3]    The Commission on Judicial Conduct's May 25, 2004 "Satisfaction of Judgment" (filed under a Supreme Court caption) indicated that the "judgment" for costs had been satisfied.

P.2d 789, 799 (1994). Proportionality review however, is "an imperfect process." *In re Owens*, 182 Ariz. 121, 127, 893 P.3d 1284, 1290 (1990). Normally the fact that one person is punished more severely than another involved in the same misconduct would not necessarily lead to a modification of a disciplinary sanction. Both the State Bar in its capacity as prosecutor and the Disciplinary Commission in its quasi-judicial capacity have broad discretion in seeking discipline and in recommending sanctions.

¶25     However, because Nelson's complete immunity from lawyer discipline inadvertently resulted from action *by this Court* - our acceptance of the Commission's recommendation that we impose the relatively minor sanction of costs upon him - we believe that this is the rare case in which reconsideration of an otherwise suitable sanction is appropriate. Our own orders caused the disparity in treatment of Dean and Nelson, and we thus should cure the problem. We assuredly do not minimize the seriousness of Dean's misconduct. But given the unique facts of this case, we believe that the interests of justice will be best served by reducing Dean's suspension to six months, the period recommended by the experienced hearing officer. Such a suspension, retroactive (as the Disciplinary Commission

11

recommended) to September 27, 2004,[4] will allow Dean to resume the practice of law, as Nelson has been free to do since his resignation as a judge.

## III.

**¶26** For the foregoing reasons, we grant Dean's petition for review, and order that she serve a six-month suspension, retroactive to September 27, 2004. In all other respects, we adopt the recommendations of the Disciplinary Commission, which include two years probation and the imposition of costs. A formal judgment in accordance with this opinion will be entered by the Court.

_____
Andrew D. Hurwitz, Justice


CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice

_____

[4] The Disciplinary Commission apparently recommended a suspension retroactive to August 2004 because it believed that Dean had become an inactive member of the State Bar at that time. Our records indicate, however, that Dean assumed inactive status on September 27, 2004.

12

_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice