The PEOPLE of the State of
Colorado, Complainant

v.

Grafton Minot BIDDLE, Respondent.

No. 07PDJ024.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Dec. 17, 2007.

On October 18, 2007, the Presiding Disciplinary Judge ("the Court") held a Sanctions Hearing pursuant to C.R.C.P. 251.18(d). Kim E. Ikeler and Julie M. Schmidt appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Grafton Minot Biddle ("Respondent") did not appear nor did counsel appear on his behalf.[1] The People presented extensive legal authority and argued for the disbarment of Respondent. The Court issues the following "Report, Decision, and Order Imposing Sanctions pursuant to C.R.C.P. 251.19(c)."

---

1. Counsel initially entered an appearance on behalf of Respondent, but withdrew before the Sanctions Hearing. Although Respondent received notice of the hearing, no one appeared on his behalf.

## REPORT, DECISION, AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

### I. *ISSUE*

Disbarment is appropriate when a lawyer in an official position knowingly misuses the position *with the intent to obtain a significant benefit or advantage for himself or another.* Suspension is appropriate when a lawyer in an official position knowingly fails to follow proper procedures or rules and causes injury or potential injury to the integrity of the legal process. Respondent engaged in an affair with a deputy district attorney who practiced in his courtroom. When judicial officials asked about the affair he denied it. What is the appropriate sanction?

**SANCTION IMPOSED: ATTORNEY SUSPENDED FOR THREE YEARS.**

### II. *PROCEDURAL HISTORY AND FACTUAL BACKGROUND*

The People filed a complaint with the Court on April 20, 2007. Respondent failed to file an answer and the Court entered a default judgment on July 17, 2007. The People charged Respondent with the following rule violations: Colo. RPC 8.4(c) (a lawyer shall not engage in Conduct involving dishonesty, fraud, deceit or misrepresentation); Colo. RPC 8.4(a) (a lawyer shall not violate or attempt to violate the rules of professional conduct or knowingly assist or induce another to do so); and Colo. RPC 8.4(d), (a lawyer shall not engage in conduct that is prejudicial to the administration of justice).

Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established. *People v. Richards*, 748 P.2d 341, 346 (Colo.

1987). Thus, the Court adopts and incorporates by reference the factual background and rule violations detailed in the complaint.[2] The Court briefly summarizes the facts below.

Respondent took and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on October 9, 1979, and is registered upon the official records of the Colorado Supreme Court, Attorney Registration No. 09638. Respondent is therefore subject to the jurisdiction of the Colorado Supreme Court and the Office of the Presiding Disciplinary Judge.

The need for sanctions in this case arise from Respondent's behavior while acting as a magistrate with the Eighteenth Judicial District and later as a judge for the Douglas County Court.[3] Respondent served approximately fifteen years as a magistrate for the Eighteenth Judicial District before his appointment to the Douglas County Court bench in July 2006.

In the spring of 2006, Respondent began an affair with Laurie A. Hurst, f/k/a Laurie A. Steinman, a deputy district attorney for the Eighteenth Judicial District.[4] Ms. Hurst occasionally appeared in the First Arraignment Center ("FAC") where Respondent sat as a magistrate during this time. She assisted with the dispositions of FAC cases, which included appearing in front of Respondent for plea agreements and sentencing recommendations. The affair ceased for a period of time and then resumed again when Respondent transitioned to the position of County Court Judge in July/August 2006.

After Respondent was appointed to the county court bench, he and Ms. Hurst engaged in various trysts both inside and out-

---

**2.** *See* the People's complaint filed April 20, 2007.

**3.** "The Supreme Court Attorney Regulation Counsel shall also have jurisdiction over the conduct of a lawyer that occurred prior to the time the lawyer held judicial office, as well as the conduct of a lawyer who is no longer a judge that occurred during the time the lawyer held judicial office, with reference to alleged violations of the Colorado Rules of Professional Conduct, if the commission did not investigate and resolve the matter during the judge's tenure in office." C.R.J.D. Rule 4(a).

**4.** Ms. Hurst was a co-respondent in these proceedings. On September 6, 2007, the People and Ms. Hurst tendered a Conditional Admission of Misconduct in which Ms. Hurst admitted violations of Colo. RPC 8.3(b), 8.4(c), 8.4(d), and 8.4(f). The Court approved the stipulation and suspended Ms. Hurst for a period of three years, all but six months stayed upon the successful completion of a two and one-half years period of probation.

side the confines of the Douglas County Courthouse where both served as public officials. Eventually, their activities were reported to the Chief Judge and the Court Administrator for Douglas County. Respondent knew his relationship with Ms. Hurst raised serious ethical questions that could jeopardize both of their licenses. But instead of ending the relationship or disclosing the same, Respondent continued the affair for nearly six months. At Respondent's behest, Ms. Hurst engaged superiors in the district attorney's office, as well as court personnel, in an effort to dispel unconfirmed rumors of their affair. She also attempted to destroy e-mail revealing the nature of their relationship.[5]

While carrying on their affair, Respondent, acting as a magistrate, failed to recuse himself when Ms. Hurst presided over matters of course in his court. Following his appointment to the county court bench, Respondent presided over two trials Ms. Hurst prosecuted. She won one and lost one. Respondent failed to recuse himself or advise the party opposing Ms. Hurst in these two cases of a conflict of interest. Nevertheless, the People concede that Respondent's conduct in these cases did not result in any favorable treatment to Ms. Hurst or anyone else.

When Chief Judge William Blair Sylvester and Judicial Administrator Laurie McKager initially phoned Respondent and questioned him about the reports of an affair between Respondent and Ms. Hurst, Respondent denied any impropriety. Later, when Judge Sylvester and Ms. McKager informed Respondent that his wife had delivered a letter to them reporting Respondent's affair with Ms. Hurst, Respondent immediately submitted his resignation and moved to Tennessee.

### III. SANCTIONS

■ The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA Standards") and Colorado Supreme Court case law are the guiding authorities for se-

lecting and imposing sanctions for lawyer misconduct. *In re Roose*, 69 P.3d 43, 46–47 (Colo.2003). In imposing a sanction after a finding of lawyer misconduct, the Court must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

■ In applying factors found in ABA *Standards* 3.0, the Court finds Respondent violated duties to the public, the legal profession, and fellow members of the bench by breaching the trust bestowed him as a lawyer entrusted with a public office. The entry of default established that Respondent *knowingly* engaged in the conduct alleged in the complaint; that is, he was aware of his conduct. The facts also support a finding that Respondent's conduct caused actual injury and serious potential injury to the integrity of the legal process.

The Court finds evidence of the following aggravating factors under ABA *Standards* 9.22: dishonest or selfish motive, a pattern of misconduct, multiple offenses, and substantial experience with the law. *See* ABA *Standards* 9.22(b), (c), (d), and (i). The Court also finds Respondent's failure to participate in these proceedings troubling.[6] The only mitigating factor presented by the People in this matter is the *absence* of a prior disciplinary record. *See* ABA *Standards* 9.32(a).

The ABA *Standards* suggest that the presumptive sanction for the misconduct established in this case ranges from suspension to disbarment.

> Disbarment is generally appropriate when a lawyer in an official or governmental position knowingly misuses the position *with the intent to obtain a significant benefit or advantage for himself or another*, or with the intent to cause serious or potentially serious injury to a party or to the integrity of the legal process.

ABA *Standards* 5.21 (emphasis added).

> Suspension is generally appropriate when a lawyer in an official or governmental

---

5. The Court notes that Respondent had been practicing law for nearly thirty years at the time these events took place. Ms. Hurst, on the other hand, had just begun her legal career as a deputy district attorney.

6. At this point Respondent has failed to demonstrate regret or recognition of the actual and serious potential harm he has caused the integrity of the legal process.

position knowingly fails to follow proper procedure or rules, and causes injury or potential injury to a party or to the integrity of the legal process.

ABA *Standards* 5.22.

The People argued that Respondent received a "significant benefit" in the form of the gratification he received while presiding over a case in which his paramour served as a party. However, they also concede that no evidence exists to show Respondent exercised his authority as a public official to "tip the scales of justice" or otherwise provide favorable treatment to Ms. Hurst at any time. *See* ABA *Standards* 5.21, *commentary* ("The public officials who are subject to disbarment generally engage in conduct involving fraud and deceit, and are generally subject to criminal sanctions as well."); *In re Rosenthal,* 73 Ill.2d 46, 21 Ill.Dec. 893, 382 N.E.2d 257 (1978) (Assistant Attorney General participated in an extortion scheme to benefit their client as part of a zoning request).

Although there is no evidence of favorable treatment to Ms. Hurst, the Court finds that Respondent caused actual injury and serious potential injury to the integrity of the legal process because of the appearance of favoritism to Ms. Hurst. Nevertheless, the Court cannot find based upon the established facts that Respondent misused his public office with the intent to obtain a significant benefit or advantage for himself or Ms. Hurst, or that he intended to cause serious or potentially serious injury to a party or to the integrity of the legal process as contemplated by ABA *Standards* 5.21. *See People v. Brown,* 726 P.2d 638 (Colo.1986) (Elected district attorney disbarred for abusing public office by causing his traffic records to be deleted from an official database). Neither the personal satisfaction of presiding over Ms. Hurst's cases, nor the mere appearance

of impropriety is sufficient to warrant disbarment under ABA *Standards* 5.21.

This is a case of first impression in Colorado. At the Court's request, the People provided extensive legal authority from other jurisdictions supporting sanctions ranging from public censure to disbarment. The People believe the strongest sanction is necessary to protect the public's confidence in the integrity of the legal process. The cases supporting disbarment cited by the People generally involved more egregious conduct than the conduct presented in this case. *See In re Mendenhall* 316 S.C. 196, 447 S.E.2d 858 (1994) (Judge disbarred after conviction for official misconduct after giving favorable rulings in exchange for sexual favors); *In re Edwards,* 694 N.E.2d 701 (Ind.1998) (Part-time judge disbarred when he used his law license to barter for sex from a client, created a fraudulent divorce and custody decree, and thereafter lied to other judges, court staff, and his client).

The Court finds that the facts in cases supporting a suspension more analogous to this case than those calling for disbarment under ABA *Standards* 5.21. *See In re Gerard,* 631 N.W.2d 271 (Iowa 2001) (Judge's secret intimate relationship with associate county attorney, who appeared before him on a daily basis, warranted a sixty-day suspension without judicial pay); *In re Adams,* 932 So.2d 1025 (Fla.2006) (County court judge stipulated to a public reprimand after he entered into a romantic relationship with a lawyer who practiced before him and then continued to preside over matters in which the lawyer appeared as counsel.). The Court therefore concludes that the plain-language of the ABA *Standards* and the relevant case law support a finding that ABA *Standards* 5.22 is the appropriate standard in this case.[7]

The People also argued that Respondent *knowingly* lied to Chief Judge Sylvester and Ms. McKager about his affair with Ms. Hurst and that this conduct warrants disbarment.[8]

---

**7.** ABA Standard 5.2 states, "[a]bsent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving public officials who engage in conduct that is prejudicial to the administration of justice or who state or imply an ability to influence improperly a government agency or official."

**8.** "Disbarment is generally appropriate when ... a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." ABA *Standards* 5.11(b). "Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud,

However, ABA *Standards* 5.11 typically deals with dishonesty in the context of serious criminal conduct (regardless of whether a criminal charge has been brought against the lawyer) whereas ABA *Standards* 5.13 typically deals with dishonesty arising out of the infirmities of human nature short of criminal conduct. *See* ABA *Standards* 5.13, *commentary*.

Nevertheless, deceiving court officials, even if the deceit occurred outside the context of an official proceeding, is a serious matter. As the Colorado Supreme Court noted in *In re Pautler*, 47 P.3d 1175, 1176 (Colo.2002), intentional deception by a licensed attorney in our state will not be tolerated, even when the deception is for an arguably valid law enforcement purpose. However, the evidence falls short of the requirements set forth in ABA *Standards* 5.11. Even if a lawyer is deceptive and fails to fully and honestly answer the court's questions in a formal proceeding, such conduct does not necessarily mandate disbarment. *See In re Cardwell*, 50 P.3d 897 (Colo.2002).

## IV. CONCLUSION

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The facts established in the complaint reveal the danger Respondent poses to the public by way of his brazen disregard of his ethical duties both as a lawyer and a public official. By engaging in this conduct, Respondent caused actual injury and serious potential injury to the integrity of the legal profession and our system of justice.

In the American system of justice, fairness, impartiality, stability, and wisdom of our legal system depend in major part on the integrity of the men and women serving as judges [and public officials]. We expect those to whom we entrust our lives, fortunes, and honor to exemplify those virtues. Respect for the rule of law is necessary for a democracy to function and flourish. As a consequence, respect for the

rule of law by those we select as judges is mandatory.

*In re Discipline of Harding*, 104 P.3d 1220 (Utah 2004).

The actual injury and serious potential injury caused to the integrity of the legal process is the most disturbing factor in this case. An independent and honorable judicial system is crucial to our system of justice. Indeed, the integrity of our judicial system is at the core of our democratic system of government. When a public official flagrantly abandons his ethical duties, he necessarily damages the public's confidence in the rule of law and the integrity of our judicial system.

After considering the ABA *Standards*, the relevant Colorado Supreme Court case law, as well as case law from other jurisdictions, the Court concludes that the lengthiest suspension permitted by the C.R.C.P. 251.6(b) is appropriate in this case. Accordingly, the Court suspends Respondent from the practice of law for a period of three years.

While Respondent's suspension is limited to three years, this does not mean he will be allowed to practice law after serving this suspension. Unless and until Respondent demonstrates clear and convincing evidence in a public hearing to a Hearing Board that he has been rehabilitated and is fit to practice law, he shall remain suspended from the practice of law.

## V. ORDER

The Court therefore **ORDERS**:

1. **GRAFTON MINOT BIDDLE**, Attorney Registration No. 09638, is **SUSPENDED** from the practice of law for a period of **THREE (3) YEARS**, effective thirty-one (31) days from the date of this order.

2. **GRAFTON MINOT BIDDLE** shall pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days of the date of this order. Respondent shall have ten (10) days within which to respond.

ABA *Standards* 5.13.

deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

3. **GRAFTON MINOT BIDDLE** shall complete and pass the Office of Attorney Regulation Counsel's Ethics School six months before filing any Petition for Reinstatement.