SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| In the Matter of: ) | Arizona Supreme Court |
| ) | No. JC-11-0001 |
| HONORABLE THEODORE ABRAMS ) | |
| Tucson Municipal Court ) | Commission on Judicial |
| Pima County, State of ) | Conduct |
| Arizona ) | No. 10-286 |
| ) | |
| ) | |
| Respondent. ) | |
| ) | |
| ) | **O P I N I O N** |
| _____ ) | |

Review from the Commission on Judicial Conduct

**CENSURE AND SUSPENSION ORDERED**

_____


OSBORN MALEDON PA                                          Phoenix
      By    Mark I. Harrison
            Mark P. Hummels
Attorneys for Theodore C. Abrams

COMMISSION ON JUDICIAL CONDUCT                            Phoenix
      By    Jennifer M. Perkins
Attorney for Commission on Judicial Conduct

STATE BAR OF ARIZONA                                      Phoenix
      By    Maret Vessella, Chief Bar Counsel
            Shauna R. Miller, Senior Bar Counsel
Attorneys for State Bar of Arizona


_____


**P E L A N D E R**, Justice

¶1      On May 25, 2011, we entered an order censuring

Theodore Abrams for violating the Code of Judicial Conduct,

permanently enjoining him from serving as a judicial officer in

Arizona, and suspending him from the practice of law for two years, with an opinion to follow. This is that opinion.

¶2 Abrams was admitted to the Arizona bar in 1990. He was appointed as a Tucson City Court Magistrate in 2002. In December 2010, the Commission on Judicial Conduct ("Commission") brought formal disciplinary charges against Abrams based on allegations of sexual harassment. In January 2011, Abrams and the Commission entered into a Stipulated Resolution in which he "acknowledge[d] that his conduct warrants removal from the bench" and agreed to the imposition of a censure and to resign his judicial position and never again seek or hold judicial office.

¶3 We granted *sua sponte* review of the Commission's recommendation that we approve the Stipulated Resolution. Pursuant to Arizona Supreme Court Rule 46(d), we invited Abrams and the State Bar to submit briefs on whether attorney discipline should be imposed and, if so, the appropriate sanction. We have jurisdiction pursuant to Article 6.1, Section 4 of the Arizona Constitution, Arizona Supreme Court Rule 46(d), and Commission Rule 29.

## I. Facts

¶4 In June 2008, Abrams began an intimate, consensual relationship with a lawyer ("Attorney A") whose private practice included criminal defense work. They engaged in sexual contact

2

for several months and maintained a close personal relationship through April 2009. During and after the affair, Attorney A appeared often in cases before Abrams, who neither disqualified himself nor disclosed the relationship to the parties or other counsel.

¶5      Attorney A introduced Abrams to an assistant public defender ("Attorney B") in July 2008.[1] In August 2009, Attorney B, a recently admitted lawyer, was assigned to cover cases in Abrams' courtroom.

¶6      For more than a year, Abrams repeatedly pursued a sexual relationship with Attorney B, who persistently rebuffed his advances. Abrams initially made lewd comments and "slurping noises" to Attorney B. On one occasion, Abrams groped Attorney B under a table at which they were sitting with others after work. Between November 2009 and October 2010, Abrams left Attorney B at least twenty-eight voicemail messages and sent her at least eighty-five text messages, many of which included sexual innuendos or explicit sexual content. At least three voicemail messages contained references to cases in which Attorney B had appeared before Abrams.

---

[1]     Attorney A also introduced Abrams to an assistant prosecutor ("Attorney C") in February 2009. Abrams contacted Attorney C at work to request her personal email address and subsequently sent her sexually explicit emails. Although Attorney C appeared before Abrams a few times, she did not appear before him after February 2009.

**¶7**        In December 2009, Abrams left Attorney B a voicemail message that even he characterized as "obscene," in which he described a sexual act he wanted to perform on her. The next day, Abrams asked Attorney B to come to his chambers to pick up some paperwork. While in chambers, Abrams asked Attorney B if she had received the voicemail message and asked to take her to a friend's condominium for sex. She declined. Abrams then inappropriately touched Attorney B and called her later that day to repeat the explicit voicemail message.

**¶8**        Attorney B rejected Abrams' overtures, telling him "that a sexual relationship would be improper because of his position as a judge, her routine appearances in his court, and the fact that he is married." At some point, Abrams reminded Attorney B of her probationary employment status and his connections in the community.

**¶9**        In October 2010, Attorney B appeared before Abrams in her first jury trial. At the end of the state's case, she moved to dismiss for lack of jurisdiction. Abrams became upset in the courtroom and accused Attorney B of wasting judicial resources, violating her duty of candor, and committing a fraud on the court. He denied the motion and declared a mistrial. During an unrelated proceeding several days later, Abrams criticized Attorney B in front of court staff and the prosecutor. At another, unrelated in-court conference, Abrams told Attorney B

4

that he would require her to confirm jurisdiction in future cases, even though the state bears the burden of establishing jurisdiction.

¶10     The uncharacteristically harsh and inappropriate treatment of Attorney B prompted an investigation that resulted in the Tucson City Attorney's office filing a sexual harassment complaint against Abrams in October 2010.    A Pima County Superior Court investigator found that Abrams' actions against Attorney B were in retaliation for her rejecting his sexual advances and telling a mutual friend about them.

¶11     The superior court's presiding judge upheld the claims of sexual harassment and retaliation in December 2010.    Later that month, the Tucson City Council voted to remove Abrams from the bench, effective January 19, 2011.    Soon thereafter, the Commission charged Abrams with judicial misconduct and instituted formal proceedings.    On January 18, 2011, Abrams resigned from the bench.

## II.  Judicial Discipline

¶12     The Arizona Constitution authorizes the Commission to recommend judicial discipline.    Ariz. Const. art. 6.1, §§ 3, 4. Although "we give serious consideration to the Commission's findings," the ultimate authority to discipline a judge lies with this Court.    *In re Lorona*, 178 Ariz. 562, 563, 875 P.2d 795, 796 (1994).

5

¶13       Because Abrams resigned, the harshest sanction available in judicial discipline proceedings is censure, *see In re Fleischman*, 188 Ariz. 106, 113, 933 P.2d 563, 570 (1997), to which Abrams agreed in the Stipulated Resolution. Accordingly, we accept the Commission's recommendation to approve the Stipulated Resolution, censure Abrams, and permanently enjoin him from holding judicial office in Arizona.

### III. Attorney Discipline

¶14       In recommending the Stipulated Resolution, the Commission observed that Abrams' conduct also "reflects upon his capacity to practice law." When a judge resigns from office as the result of judicial discipline, the judge and State Bar may recommend "whether lawyer discipline . . . should be imposed based on the record in the judicial proceeding, and if so, the extent thereof." Ariz. R. Sup. Ct. 46(d).[2] Abrams argues that

---

[2]     For purposes of Rule 46(d), the "record" includes "all documents filed in a case involving formal [judicial disciplinary] proceedings." Ariz. R. Comm'n on Jud. Conduct, Terminology. Contrary to Abrams' contention, that record is not limited to the Stipulated Resolution. Rather, under the Commission's rules, the record includes all items presented to the Commission and later transmitted to this Court (including the City of Tucson's sexual harassment complaint, the memoranda prepared by the Pima County Superior Court's investigator and presiding judge, and the compact disc that contains voicemail messages left by Abrams on Attorney B's cellular phone). In contrast, on the State Bar's motion, this Court previously struck a declaration by Abrams' wife, which was attached to a filing by Abrams in this Court, because it was not before the Commission, filed in the judicial disciplinary proceeding, or otherwise part of the record.

6

"the most appropriate sanction would be a reprimand and probation." The State Bar urges us to impose a lengthy suspension of Abrams' license to practice law.

¶15     "The purpose of professional discipline is twofold: (1) to protect the public, the legal profession, and the justice system, and (2) to deter others from engaging in misconduct." *In re Scholl*, 200 Ariz. 222, 227 ¶ 29, 25 P.3d 710, 715 (2001). Attorney discipline also aims "to instill public confidence in the Bar's integrity." *In re Phillips*, 226 Ariz. 112, 117 ¶ 28, 244 P.3d 549, 554 (2010). Although not meant to punish the attorney, discipline may have that incidental effect. *In re White-Steiner*, 219 Ariz. 323, 325 ¶ 9, 198 P.3d 1195, 1197 (2009); *Scholl*, 200 Ariz. at 224 ¶ 8, 25 P.3d at 712.

¶16     In assessing sanctions, the Court is guided by the American Bar Association's *Standards for Imposing Lawyer Sanctions* ("ABA Standards") (2005). *Phillips*, 226 Ariz. at 117 ¶ 29, 244 P.3d at 554 (citing *In re Van Dox,* 214 Ariz. 300, 303 ¶ 11, 152 P.3d 1183, 1186 (2007)). ABA Standard 5.2 is "appropriate in cases involving public officials who engage in conduct that is prejudicial to the administration of justice." Under that standard, suspension is appropriate "when a lawyer in an official or governmental position knowingly fails to follow proper procedures or rules, and causes injury or potential

7

injury to a party or to the integrity of the legal process." ABA Standard 5.22.

¶17     ABA Standard 3.0 prescribes four relevant factors for determining the appropriate sanction: "(1) the duty violated, (2) the lawyer's mental state, (3) the potential or actual injury caused by the lawyer's conduct, and (4) the existence of aggravating or mitigating factors." *Phillips*, 226 Ariz. at 117 ¶ 29, 244 P.3d at 554.   In addition, the Court may "look to other, similar cases in determining whether the sanction imposed is proportionate to the misconduct charged." *Van Dox*, 214 Ariz. at 307 ¶ 39, 152 P.3d at 1190 (quoting *In re Alcorn,* 202 Ariz. 62, 76 ¶ 49, 41 P.3d 600, 614 (2002)).

**A.  Duty Violated**

¶18     Abrams concedes having violated Arizona Supreme Court Rule 41(c) (failing to "maintain the respect due to courts of justice") and Arizona Rule of Professional Conduct ("ER") 8.4(d) (engaging in conduct that is "prejudicial to the administration of justice").   *See* Ariz. R. Sup. Ct. 42 (containing Arizona Rules of Professional Conduct).   Abrams also violated Rule 41(g) (unprofessional conduct) and ER 8.4(c) (dishonest and deceitful conduct).

¶19     In the Stipulated Resolution, Abrams also admitted that his misconduct violated various provisions in the Code of Judicial Conduct: Rules 1.2 (failing to "avoid impropriety" and

8

"promote[] public confidence in the independence, integrity, and impartiality of the judiciary"), 1.3 ("abus[ing] the prestige of judicial office to advance the [judge's] personal . . . interests"), 2.3 (failing to perform judicial duties "without bias or prejudice" and refrain from sexual harassment), 2.4 (permitting extrajudicial "interests or relationships to influence the judge's judicial conduct or judgment"), 2.9 (engaging in improper ex parte communications), 2.11 (failing to disqualify himself "in any proceeding in which the judge's impartiality might reasonably be questioned"), and 3.1 (engaging in extrajudicial activities that "interfere with the proper performance of the judge's judicial duties" and that "appear . . . to undermine the judge's independence, integrity, or impartiality or demean the judicial office"). *See* Ariz. R. Sup. Ct. 81 (containing Arizona Code of Judicial Conduct). These violations are grounds for attorney discipline. *See* Ariz. R. Sup. Ct. 54(b).

## B.  Mental State

¶20      "A lawyer's mental state affects the sanction imposed for ethical violations." *White-Steiner*, 219 Ariz. at 325 ¶ 13, 198 P.3d at 1197.  "Because intentional or knowing conduct threatens more harm than does negligent conduct, it is sanctioned more severely." *Id.*

¶21      Because mental state generally is a question of fact,

we normally defer to a hearing officer's findings. *Van Dox*, 214 Ariz. at 304 ¶¶ 14-16, 152 P.3d at 1187; *see also* Ariz. R. Sup. Ct. 59(l) ("In reviewing findings of fact, the court shall apply a clearly erroneous standard."). We are, however, always the "ultimate trier of fact and law" in disciplinary proceedings. *In re Zawada*, 208 Ariz. 232, 236 ¶ 11, 92 P.3d 862, 866 (2004) (quoting *In re Brady*, 186 Ariz. 370, 373, 923 P.2d 836, 839 (1996)). Here, the Commission did not conduct an evidentiary hearing or make findings of fact because of the Stipulated Resolution. Thus, we may examine the record before the Commission and, in the first instance, make findings of fact to determine an appropriate sanction.

¶22    "Knowledge" is "the conscious awareness of the nature or attendant circumstances of the conduct." *Van Dox*, 214 Ariz. at 305 ¶ 21, 152 P.3d at 1188 (quoting ABA Standards at 13). Abrams concedes that "he knowingly failed to inform the parties before him on more than one occasion of his intimate relationship with [Attorney A,] who appeared before his court on behalf of criminal defendants." Abrams does not expressly concede that his sexual harassment and retaliation against Attorney B were knowingly committed. Nonetheless, the record establishes that he knowingly engaged in that misconduct. As the Pima County Superior Court investigator reported, Abrams "began to treat [Attorney B] differently in the courtroom" as

10

she "continued to reject his advances." Attorney B not only declined those advances, but also warned Abrams that a sexual relationship would be improper. Abrams was thus aware that his sexual overtures were both unwelcome and wrong, yet persisted in calling and harassing Attorney B over an extended time frame.

**C. Actual or Potential Injury**

¶23 We next consider "the extent of the actual or potential injury caused by the lawyer's misconduct." ABA Standards at 9. "Injury" is the "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." *Id.* at 13.

¶24 Abrams' conduct caused actual injury in several ways. He subjected Attorney B to repeated, unwanted sexual advances, which undoubtedly caused stress and anxiety. When she rejected his overtures and confided in a mutual friend about them, Abrams retaliated by questioning Attorney B's competence and professional integrity in open court, embarrassing, demeaning, and humiliating her.

¶25 Moreover, Abrams injured the legal system by exploiting his judicial position in pursuit of sexual gratification. *See* Ariz. R. Sup. Ct. 81, Rule 1.3. He maintained an intimate relationship with Attorney A while she was appearing in cases before him, despite the obvious conflict and impropriety and without disclosing the conflict to opposing

11

attorneys and their clients. *See id.*, Rule 2.11. And after Attorney B repeatedly rebuffed Abrams' sexual propositions, he abused his power by retaliating against her from the bench. "Such misuse of public office destroys public confidence in the integrity and impartiality of the judiciary . . . ." *In re Jett*, 180 Ariz. 103, 108, 882 P.2d 414, 419 (1994).

**D. Presumptive Sanction**

¶26 Because Abrams knowingly engaged in misconduct that directly conflicted with his role as a judge, adversely affected at least one attorney who regularly appeared before him, and undermined the integrity of the legal system, suspension is the presumptive sanction. *See* ABA Standard 5.22. This presumption, however, may be overcome by "[t]he presence of aggravating or mitigating factors." *Van Dox*, 214 Ariz. at 306 ¶ 31, 152 P.3d at 1189. We next turn to those factors.

**E. Aggravating and Mitigating Factors**

¶27 ABA Standards 9.2 and 9.3 list aggravating and mitigating factors to consider in deciding an appropriate sanction. These factors "need only be supported by reasonable evidence." *In re Peasley*, 208 Ariz. 27, 36 ¶ 36, 90 P.3d 764, 773 (2004).

¶28 The record establishes three aggravating factors. First, Abrams engaged in a pattern of misconduct over a significant period of time. *See* ABA Standard 9.22(c). Second,

12

Abrams committed multiple offenses. *See* ABA Standard 9.22(d). Finally, because Attorney B was a new lawyer who regularly appeared in Abrams' court, she was a particularly vulnerable victim. *See* ABA Standard 9.22(h).

¶29     With respect to mitigation, the record clearly establishes several mitigating factors, including Abrams' lack of a prior disciplinary record, ABA Standard 9.32(a), his character and prior reputation, ABA Standard 9.32(g), and the imposition of other penalties, ABA Standard 9.32(k).

¶30     Abrams' full and free disclosure to the Commission and cooperative attitude in the judicial disciplinary proceedings also constitute a mitigating factor. *See* ABA Standard 9.32(e). The State Bar challenges this factor because Abrams' cooperation enabled him to minimize the Commission's development of the record and spared him the embarrassment of a formal hearing. But Abrams nevertheless settled the case quickly, and by doing so avoided subjecting his victims to a lengthy, embarrassing disciplinary process. In addition, Abrams' cooperation with the Commission, resignation from his judicial office, and willingness to expeditiously resolve the judicial disciplinary charges did not necessarily prevent the Commission from further investigating the charges and developing a more extensive record before stipulating to a resolution.

¶31     Based on his uncontroverted averments in the

13

Stipulated Resolution, Abrams claims his misconduct arose from personal and emotional problems. *See* ABA Standard 9.32(c). In 2007, Abrams underwent open-heart surgery, after which he became addicted to pain medication and developed severe depression. Abrams argues that these problems made it difficult for him to control his impulses, "affected his judgment," and "led to inappropriate relationships and communications."

¶32    Assuming the factual accuracy of these assertions, we give them little mitigating weight unless a causal nexus exists between Abrams' personal and health issues and his misconduct. *See In re Bowen*, 178 Ariz. 283, 287, 872 P.2d 1235, 1239 (1994) (giving personal and emotional problems "little, if any, weight" when "no direct causation [existed] between [the attorney's] alcoholism and his misconduct"); *see also Scholl*, 200 Ariz. at 226-27 ¶¶ 25-27, 25 P.3d at 714-15. Other than Abrams' own uncorroborated statements, the record contains no evidence of any such causal link. *See In re Augenstein*, 178 Ariz. 133, 137-38, 871 P.2d 254, 258-59 (1994) (concluding that absent any "medical evidence to corroborate" attorney's allegation that personal and "emotional problems caused his misconduct," record did not support claim that such "problems constitute a mitigating factor").

¶33    Various steps that Abrams took to treat his disorders, however, show an effort to rectify his misconduct, a mitigating

14

factor. *See* ABA Standard 9.32(d). In the Stipulated Resolution, Abrams averred that he sought psychiatric treatment before the allegations of sexual harassment came to light. And once Abrams was charged with wrongdoing, he admitted himself to an intensive substance abuse and psychiatric treatment program.

¶34    Three additional mitigating factors Abrams proposes are not supported by the record. He asserts that he did not have a dishonest or selfish motive. *See* ABA Standard 9.32(b). But he clearly displayed a selfish motive by pursuing his own sexual interests without regard for his oath and duties to the legal system. Abrams claims mental disability and chemical dependency. *See* ABA Standard 9.32(i). But this mitigator requires evidence of a "sustained period of successful rehabilitation," *id.*, which is not established here.

¶35    Finally, Abrams asserts remorse as a mitigating factor. *See* ABA Standard 9.32(l). Abrams stipulated that his actions violated the Code of Judicial Conduct and alleged in the Stipulated Resolution "[d]eep remorse and embarrassment" as a mitigating factor. But the record does not clearly reflect that he is remorseful. *Cf. Augenstein*, 178 Ariz. at 137, 871 P.2d at 258 ("Those seeking mitigation relief based upon remorse must present a showing of more than having said they are sorry." (quotation and alteration omitted)). The memoranda of Pima County Superior Court's investigator and presiding judge note,

15

based on that court's investigation, that "Abrams claims that [Attorney B] did not necessarily object to [his] sexual comments," and "continues to maintain that he does not feel he was harassing her."

¶36    Abrams' mitigation evidence does not overcome the presumptive sanction of suspension.  He admitted to suffering serious drug addiction and mental health problems, but the record contains no evidence suggesting he has overcome these disorders.  We do not doubt the sincerity of his efforts to seek treatment, but the absence of evidence of the success of Abrams' efforts at rehabilitation diminishes the weight of this alleged mitigator.  *See In re Stout,* 122 Ariz. 503, 504, 596 P.2d 29, 30 (1979) ("Our primary concern must be the fulfillment of proper professional standards, whatever the unfortunate cause, emotional or otherwise, for the attorney's failure to do so." (quotation omitted); *see also Jett*, 180 Ariz. at 108, 110, 882 P.2d at 419, 421 ("[U]sing the power of . . . judicial office for purely personal reasons is grossly improper," and "regardless of the reasons, still constitutes willful misconduct.").

## F.  Proportionality Review

¶37    "We may consider the sanctions imposed in similar cases 'to preserve some degree of proportionality, ensure that the sanction fits the offense, and avoid discipline by whim or

16

caprice.'" *Phillips*, 226 Ariz. at 118-19 ¶ 37, 244 P.3d at 555-56 (quoting *In re Dean,* 212 Ariz. 221, 225 ¶ 24, 129 P.3d 943, 947 (2006)).

¶38     No reported Arizona decision addresses the nature and extent of appropriate attorney sanctions for the type of judicial misconduct at issue here.  But several analogous out-of-state cases are helpful.  In *People v. Biddle*, a judge who had an affair with a prosecutor who "occasionally appeared" in his court and "engaged in various trysts [with that attorney] both inside and outside the . . . [c]ourthouse" was suspended from the practice of law for three years after he resigned from the bench.  180 P.3d 461, 462-63, 465 (Colo. O.P.D.J. 2007).  And in *Disciplinary Counsel v. Campbell*, a judge who made lewd and offensive comments to attorneys, engaged in sexual harassment in open court, and made sexual advances toward an attorney during an in-chambers meeting was suspended from the practice of law for one year.  623 N.E.2d 24, 25-28 (Ohio 1993).

¶39     In arguing against suspension, Abrams cites several Arizona cases that he claims involved comparable misconduct.  But most of these cases dealt only with judicial discipline and are thus inapposite.  *See Fleischman*, 188 Ariz. at 113, 933 P.2d at 570; *Jett*, 180 Ariz. at 111, 882 P.2d at 422; *In re Gumaer*, 177 Ariz. 280, 283, 867 P.2d 850, 853 (1994); *In re Marquardt*, 161 Ariz. 206, 217-18, 778 P.2d 241, 252-53 (1989); *In re Ackel*,

17

155 Ariz. 34, 43, 745 P.2d 92, 101 (1987), *overruled in part by Jett*, 180 Ariz. at 109, 882 P.2d at 420; *In re Morales*, Ariz. Comm'n on Jud. Conduct No. 06-154 (Mar. 13, 2007).

¶40     The two Arizona cases Abrams cites in which attorney discipline was imposed for judicial misconduct also are not particularly helpful.  In *Dean*, we noted that no attorney discipline was imposed on a judge for his two-year affair with a prosecutor who appeared regularly in his court, but that result was due to a procedural error that deprived us of jurisdiction to impose attorney discipline, not from a reasoned decision that such discipline was not appropriate.  212 Ariz. at 221-22 ¶¶ 2-4, 223-24 ¶¶ 15-22, 129 P.3d at 943-46.  And in *Scholl*, we suspended a former judge from the practice of law for six months after his convictions of filing false tax returns and illegal structuring of currency transactions, offenses committed during Scholl's judgeship that arose from his gambling addiction.  200 Ariz. at 223 ¶ 1, 228 ¶ 40, 25 P.3d at 711, 716.  In *Scholl*, however, the judge's crimes, although serious, were not committed in his judicial capacity, the offenses occurred several years before the disciplinary proceedings, and the judge had successfully rehabilitated himself from his gambling addiction.  *Id.* at 223 ¶ 1, 224 ¶ 12, 228 ¶ 40, 25 P.3d at 711-12, 716.

¶41     The out-of-state cases remain the best yardstick for

18

measuring proportionality. Abrams' proposal of a reprimand fails to acknowledge the seriousness of his misconduct and the harm it inflicted on the legal system. He placed his own sexual desires above his obligation to "exhibit the highest standards of honesty and integrity." *In re Savoy*, 181 Ariz. 368, 371, 891 P.2d 236, 239 (1995).

¶42 Suspension is thus an appropriate and proportionate sanction for Abrams' misconduct, despite his resignation from the bench and agreement to never again seek or hold judicial office. *See*, *e.g.*, *Biddle*, 180 P.3d at 465; *cf*. *Florida Bar v. Corbin*, 540 So. 2d 105, 106-07 (Fla. 1989) (suspending attorney for three years after he resigned from the bench, based on his criminal conviction of attempted sexual activity with a minor while serving as a judge); *In re Brooks*, 449 S.E.2d 87, 88 (Ga. 1994) (suspending attorney for three years after he left the bench, based on multiple misdemeanor convictions of sexual battery while serving as a judge); *In re Higgins*, 436 N.Y.S.2d 71, 71-72 (N.Y. App. Div. 1981) (suspending attorney for two years after he resigned from the bench, based on his soliciting and agreeing to accept sexual favors from a woman whom he suggested would receive in return favored treatment in his family court).

G. Length of Suspension

¶43 "Judges are held to higher standards of integrity and

19

ethical conduct than attorneys or other persons not invested with the public trust . . . . Even in a judge's personal life, he or she must adhere to standards of probity and propriety far higher than those deemed acceptable for others." James J. Alfini, Steven Lubet, Jeffrey M. Shaman & Charles Gardner Geyh, *Judicial Conduct and Ethics*, at 1-4 (4th ed. 2007). The judiciary's authority fundamentally rests "on its reputation for impartiality." *Mistretta v. United States*, 488 U.S. 361, 407 (1989). Nothing threatens public confidence in the courts and the legal system more than a judge who abuses his power and exploits the prestige of his office for personal benefit.

¶44     "[T]he judge's role is so intimate a part of the process of justice that misbehavior as a judge must inevitably reflect upon" that person's fitness to practice law. *In re Mattera*, 168 A.2d 38, 41 (N.J. 1961); *see also* ER 8.4 cmt. 5 (Effective Dec. 1, 2003) ("Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of lawyers.").

¶45     In their oath of admission, Arizona attorneys pledge to "maintain the respect due to courts of justice and judicial officers," "abstain from all offensive conduct," and "at all times faithfully and diligently adhere to the rules of professional responsibility and a lawyer's creed of

20

professionalism." *See* Ariz. R. Sup. Ct. 31 (The Oath of Admission to the Bar), 37(b). The oath of office for Arizona judges similarly includes a solemn commitment to "faithfully and impartially discharge the duties of [one's] office to the best of [one's] ability." Ariz. Const. art. 6, § 26. Abrams' misconduct violated both oaths, and "[a] violation of his judicial oath aggravates the offense of disregarding his oath as a lawyer." *In re Hasler*, 447 S.W.2d 65, 65-66 (Mo. 1969) (quoting *State ex rel. Neb. State Bar Ass'n v. Conover*, 88 N.W.2d 135, 138 (Neb. 1958)) (ordering disbarment of attorney based on his private meetings and conversations with party while presiding as judge over her divorce proceeding).

¶46 Abrams engaged in "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Ariz. Const. art. 6.1, § 4. His misbehavior severely tarnished the justice system and the legal profession. By abusing his office, Abrams struck at the very heart of the judiciary's legitimacy, injuring not just his victims, but the law as an institution.

¶47 "Faith in public officials is difficult to restore." *In re Koch*, 181 Ariz. 352, 354, 890 P.2d 1137, 1139 (1995). Judicial misconduct erodes public confidence in our justice system, and we must help restore the public's faith in our legal institutions and deter attorneys from similar misbehavior, two

21

of the primary purposes of professional discipline.  To properly protect the public, we must also ensure that attorneys suffering from serious mental health issues or drug addiction rehabilitate themselves before resuming the practice of law.  A reprimand or shorter term of suspension would not adequately address these objectives.  For all of these reasons, we conclude that an appropriate sanction for Abrams' misconduct is a two-year suspension from the practice of law.

**IV.**

¶48    Having accepted the Commission's recommendation to approve the Stipulated Resolution between the Commission and Abrams, we censure him and permanently enjoin him from again serving as a judicial officer in Arizona.  We also suspend Abrams' license to practice law in this state for two years, effective June 1, 2011.

_____
A. John Pelander, Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
W. Scott Bales, Justice

22

_____
Robert M. Brutinel, Justice