TO BE PUBLISHED

# Supreme Court of Kentucky

## 2022-SC-0063-KB

DAWN MICHELLE GENTRY                           MOVANT

V.                    IN SUPREME COURT

KENTUCKY BAR ASSOCIATION                RESPONDENT

## OPINION AND ORDER

Dawn Michelle Gentry, whose bar roster address is 505 York Street, Newport, KY, 41017, KBA Member Number 91622, moves this Court, pursuant to Supreme Court Rule (SCR) 3.480(2), to impose a sanction of a four-year suspension from the practice of law. The Kentucky Bar Association (KBA) has no objection to Gentry's request. For the following reasons, the motion is granted.

### I. BACKGROUND

In December 2016, Gentry was appointed by the governor as a circuit judge for the 16th Judicial Circuit, 5th Division, a Family Court division in Kenton County. She held this position from her appointment in 2016 until her removal in 2021. While working as a judge, Gentry knowingly approved false timesheets for Stephen Penrose (with whom Gentry had an ongoing romantic

relationship), Meredith Smith, and Ms. Aubrey.[1] Gentry fired Meredith Smith in order to hire Penrose, her minister, whom she admitted to hiring not based on merit, but rather due to their personal relationship. She eventually also removed attorney Michael Hummel from the Guardian Ad Litem panel, alleging poor performance. Gentry knew that evidence did not show that Hummel performed poorly prior to his removal.

In 2018, Gentry sought election to keep her seat on the Kenton Circuit Court. Leading up to that election, she coerced members of the Guardian Ad Litem panel to donate the maximum amount to her campaign, as well as to participate in her election efforts during working hours. Gentry directed her staff attorney to place and deliver campaign signs. She also required her case management specialist/mediator to write thank-you notes for the campaign and publicly hold a campaign sign on Election Day. Gentry then attempted to conceal the above conduct.

Following Gentry's misuse of staff, the Judicial Conduct Commission (JCC) opened an investigation. The JCC made each of the above factual findings adopted herein. During the JCC's investigation and proceedings, Gentry filed a bar complaint against Katherine Shultz, an attorney cooperating with the JCC's proceedings against Gentry. In the complaint, Gentry complained of conduct dating back to over a year prior to the date of the complaint. Said complaint was submitted to the KBA a mere three days after

_____

[1] The JCC, KBA, and Inquiry Commission all refer to Ms. Aubrey without a first name. We do the same in this Opinion.

2

Gentry filed her answer to the JCC's notice of formal proceedings and charges. Gentry later admitted that by filing the bar complaint, she hoped to stall the investigation into her own wrongdoing.

The investigation nevertheless progressed. At a hearing before the JCC, Gentry lied in sworn testimony about her relationship with Penrose. She claimed that they were not romantically involved. However, Gentry now admits that she had a romantic relationship with Penrose, her subordinate. Gentry also "fail[ed] to be candid and honest with the Commission" about why Smith and Hummel were released from service.

The JCC ultimately found Gentry to be unfit for the office of Judge. Gentry was therefore removed from the bench. On appeal, we affirmed that the removal was appropriate. *Gentry v. Jud. Conduct Comm'n*, 612 S.W.3d 832 (Ky. 2020). The Kentucky Bar Association (KBA) then initiated its own investigation into Gentry for her breaches of conduct as an attorney, rather than as a judge.

Gentry alleges that her violations were due in large part to alcohol use and the manipulation she experienced at the hands of Penrose, a person whom she asserted she trusted deeply as her minister and friend. Gentry has taken steps to counteract these influences, including attending AA meetings, therapy, and other relevant treatment. Gentry has expressed deep regret for her actions.

Gentry was ultimately charged by the Inquiry Commission with violating one count of SCR 3.130(8.2)(b) for failing to comply with the applicable provisions of the Judicial Code of Conduct in the course of an election, three counts of SCR 3.130(8.4)(c) for engaging in conduct involving dishonesty, one

count of SCR 3.130(8.4)(b) for allegedly committing a criminal act that reflects adversely on a lawyer's honesty, and one count of SCR 3.130(3.4)(f) for initiating disciplinary proceedings to obtain an advantage in a civil matter. Gentry admits to each count except for her alleged violation of SCR 3.130(8.4)(b). The KBA has agreed to dismiss this count.

## II. ANALYSIS

Prior to this case, Gentry has received no private admonitions, suspensions, or other discipline. Pursuant to SCR 3.480(2), Gentry and the KBA have agreed to a negotiated sanction of four-years' suspension. This Court therefore "approve[s] the sanction agreed to by the parties." *Id.*

The KBA rightly points out that the instant case is unique in the Commonwealth. No past KBA cases are directly on-point. In lieu of precedent mirroring the case at bar, we draw upon two instructive cases, as well as the American Bar Association's (ABA) Standards for Imposing Lawyer Sanctions.

In *Kentucky Bar Ass'n v. Maze,* an attorney was permanently disbarred for vote buying and multiple instances of dishonesty. 397 S.W.3d 891 (Ky. 2013). Maze, the Bath County Attorney, participated in a vote buying scheme while running for reelection. *Id.* at 892. Later, he lied in sworn testimony about the scheme. *Id.* at 893. Maze never acknowledged his own wrongdoing. *Id.* at 898. This Court was particularly troubled by Maze's behavior given his position of authority as County Attorney. *Id.* at 899. Because of his dishonesty and campaign fraud, Maze was permanently disbarred. *Id.* at 900.

4

In *Kentucky Bar Ass'n v. Lyon*, an attorney was disciplined after entering a guilty plea for one count of perjury in a separate matter. 181 S.W.3d 554 (Ky. 2005). The perjury "arose from his testifying in Jefferson District Court, Probate Division, that the purported Last Will and Testament of Leathean Frazier was, in fact, her will, and that he had witnessed its execution." *Id.* at 555. In the course of Lyon's 40-year career, he had no prior discipline or complaints. *Id.* This Court held that the appropriate punishment for Lyon's dishonesty was a four-year and nine-month suspension. *Id.*

Unlike Maze, Gentry did not engage in vote buying. Gentry did, however, lie under oath to the Judicial Conduct Commission. She also violated the Code of Judicial Ethics by using state resources and employees to benefit her campaign. Furthermore, Gentry, like Maze, was in a position of authority at the time of her misconduct. However, Gentry's conduct is less severe than Maze's, and we are moved by the mitigating factors in her case (e.g., admission of fault, demonstrated alcoholism and treatment, alleged manipulation). Gentry's dishonesty is more akin to that in *Lyon*, although Lyon's dishonesty was limited in scope and occurred within a matter to which he was not a party.

Although these cases are instructive, they stand for two markedly different punishments for highly distinguishable cases. As stated, Maze never acknowledged wrongdoing, and both Maze and Lyon were ultimately found criminally guilty, whereas Gentry was not. Gentry admits wrongdoing and expresses deep remorse. Therefore, *Maze* and *Lyon* cannot be wholly dispositive. As such, it is appropriate to look to the ABA for guidance.

We turn now to the ABA's Standards for Imposing Lawyer Sanctions. Standard 5.1, *Failure to Maintain Personal Integrity*, suggests disbarment when "a lawyer engages in any other intentional conduct involving dishonesty . . . that seriously adversely reflects on the lawyer's fitness to practice." 5.11(b). The ABA suggests "reprimand" when a lawyer "knowingly engages in any other conduct that involves dishonesty . . . and that adversely reflects on the lawyer's fitness to practice law." 5.13. Gentry's behavior falls between that requiring permanent disbarment and reprimand. A suspension, as opposed to disbarment, is therefore appropriate under the ABA's scheme.

The KBA and Gentry have agreed, considering her unique circumstances, to a suspension of four years. Given the distinctive facts of this case, we hold the negotiated sanction of four-years' suspension is appropriate.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. Dawn Michelle Gentry is found guilty of violating one count of SCR 3.130(8.2)(b), three counts of SCR 3.130(8.4)(c), and one count of SCR 3.130(3.4)(f). One count of a violation of SCR 3.130(8.4)(b) is dismissed.

2. Gentry is suspended from the practice of law in Kentucky for a period of four years.

3. If she has not already done so, pursuant to SCR 3.390, Gentry shall promptly take all reasonable steps to protect the interests of her clients, including, within ten days after the issuance of this order, notifying by letter all clients of her inability to represent them and of the necessity and urgency of promptly retaining new counsel and notifying all courts

6

or other tribunals in which Gentry has matters pending. Gentry shall simultaneously provide a copy of all such letters to the Office of Bar Counsel;

4. If she has not already done so, pursuant to SCR 3.390, Gentry shall immediately cancel any pending advertisements, shall terminate any advertising activity for the duration of the term of suspension, and shall not allow her name to be used by a law firm in any manner until she is reinstated;

5. Pursuant to SCR 3.390, Gentry shall not, during the term of suspension and until reinstatement, accept new clients or collect unearned fees;

6. In accordance with SCR 3.450, Gentry shall pay all costs associated with these disciplinary proceedings against her, and for which execution may issue from this Court upon finality of this Opinion and Order, totaling $101.11.

All sitting. Minton, C.J.; Keller and Nickell, JJ., concur. Hughes, J., concurs in result only by separate opinion. Lambert, J., dissents by separate opinion which Conley and VanMeter, JJ., join.

HUGHES, J., CONCURRING IN RESULT ONLY: I agree with the four-year suspension but would probate three years.

LAMBERT, J., DISSENTING. Respectfully, I must dissent. While I in no way condone Gentry's misconduct, I would reject the requested sanction and dismiss the KBA's charges against her.

As the majority addresses, Gentry was previously disciplined by the JCC for the same misconduct which forms the basis for the KBA's current charges against her.[2]  While I acknowledge that the KBA likely has the authority to seek additional sanctions against a lawyer who has been previously disciplined by the JCC under certain circumstances,[3] I disagree with the imposition of additional sanctions in this case for two reasons.

First, notwithstanding its long-standing ability to do so, the KBA has tried to impose additional sanctions on a judge, former judge, or an attorney who has been previously subjected to JCC discipline only twice.  In the first case, *Kentucky Bar Ass'n v. Hardesty,* the KBA sought to discipline a former judge who had been previously sanctioned by the JCC.[4]  However, in *Hardesty*, the judge had short-circuited the JCC's disciplinary process by resigning his position after the JCC initiated its investigation.[5]  Only then did the KBA seek to discipline him for the same misconduct that the JCC would have sanctioned.[6]  Ultimately, because of the unconstitutionality of a former version of SCR 4.020(1)(b) regarding the judicial discipline process, Hardesty suffered

---

[2] *See Gentry v. Jud. Conduct Comm'n*, 642 S.W.3d 832 (Ky. 2020).

[3] SCR 4.020(1)(d) ("The [Judicial Conduct] Commission shall have authority . . . To refer any judge of the Court of Justice or lawyer while a candidate for judicial office, after notice and hearing found by the Commission to be guilty of misconduct, to the Kentucky Bar Association for possible suspension or disbarment from the practice of law.").  *See also Ky. Bar Ass'n v. Hardesty*, 775 S.W.2d 87 (Ky. 1989) (holding "it [is] appropriate for the Bar Association to proceed against the individual in his capacity as a lawyer, as provided for in SCR Rule 3, regardless of the action taken by the [JCC].").

[4] *Hardesty*, 775 S.W.2d at 87.

[5] *Id.*

[6] *Id.*

8

nothing more than a public censure by the JCC for his alleged misconduct,[7] though the KBA sought a one-year suspension.[8]

In the second case, *Kentucky Bar Ass'n v. Wilson*, this Court adopted the Board of Governor's recommendation that former judge Billy Wilson be suspended from the practice of law for one year based on the Board's finding that he was guilty of "unethical and unprofessional conduct calculated to bring the bench and bar of Kentucky into disrepute."[9] Wilson did not request a review of the Board of Governor's recommendation.[10] Consequently, the opinion does not discuss the specifics of his misconduct. However, the KBA's charges were brought just one year after Wilson was removed from the bench via this Court's opinion in *Wilson v. Judicial Retirement and Removal Com'n*.[11] It is therefore reasonable to assume that the KBA's charges were likely based on the same misconduct alleged in the Judicial Retirement and Removal Commission's case against Wilson. However, we cannot be sure that the KBA's disciplinary action was limited to only his judicial behavior. In that case, the

---

[7] The accusations against former Judge Thomas F. Hardesty included sexual misconduct and *quid pro quo* behavior involving vulnerable female criminal defendants that appeared in his court. *Id.* at 87. It must be noted that in his case, the KBA only sought a one-year suspension, which would have been former Judge Hardesty's only consequence other than a public censure by the Judicial Retirement and Removal Commission, the previous name of the JCC. But, because this Court held the prior rule to be unconstitutional, Hardesty only suffered a public censure from the Commission.

[8] *Id.* at 88.

[9] 698 S.W.2d 316, 316 (Ky. 1985).

[10] *Id.* at 317.

[11] 673 S.W.2d 426 (Ky. 1984).

Commission found Wilson guilty of two counts of misconduct in office.[12] The first count alleged that Wilson "actively [participated] as a judge in a judicial [proceeding] involving a close personal friend."[13] The second count alleged that Wilson "[dismissed] criminal charges against a defendant without notice to or knowledge of the attorney for the Commonwealth of Kentucky."[14] This Court affirmed the Commission's order removing Wilson from office for the remainder of his term.[15] I would highlight that when the KBA subsequently brought its own charges against Wilson, it sought only a one year suspension from the practice of law.

In this case, the KBA acknowledged that "there does not appear to be Kentucky case law on point," but cited three cases from other jurisdictions to support its contention that a suspension for a period of four years was appropriate. However, those cases are distinguishable.

In the first case, *Disciplinary Counsel v. Horton*, the Ohio Disciplinary Counsel brought charges against Horton, a judge, after he had voluntarily resigned from the bench.[16] Further, the complaint alleged that Horton had violated multiple provisions of *both* the Code of Judicial Conduct and the Rules of Professional Conduct.[17] In other words, Horton had not been previously

---

[12] *Id.* at 426.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 428.

[16] 140 N.E.3d 561, 563 (Ohio 2019).

[17] *Id.*

10

sanctioned, and his alleged violations of both the judicial conduct rules and the rules of professional conduct were brought against him at the same time, not sequentially. A similar distinction appears in another case cited by the KBA, *In re Abrams*.[18] In that case, the recommended sanctions for violating both Arizona's Code of Judicial Conduct and its Rules of Professional conduct were considered and imposed by Arizona's Supreme Court, also at the same time.[19]

The final case cited by the KBA, *In Matter of Simon*,[20] is the most factually similar case to the one now before us. However, it too is distinguishable. In *Simon*, a judge had been previously removed from the bench as a result of charges of judicial misconduct brought against him by the State Commission on Judicial Conduct.[21] Subsequent to his removal, the separate Grievance Committee charged him with several counts of violating New York's Rules of Professional Conduct.[22] In *Simon*, the Court adopted the factual findings from the previous removal proceedings, and disbarred Simon based on that conduct.[23] But that case is different from the one now before us because "notwithstanding the passage of time, [Simon continued] to lack insight into the effect of his behavior, and [continued] to fail to recognize the

---

[18] 257 P.3d 167 (Ariz. 2011).

[19] *Id.* at 174-75.

[20] 169 A.D.3d 211 (N.Y. 2019).

[21] *Id.* at 213.

[22] *Id.* at 212.

[23] *Id.* at 213-14.

11

inappropriateness of his actions or attitudes."[24]  The same cannot be said of Gentry, who has on multiple occasions acknowledged the wrongfulness of her actions, atoned for the shame she has brought to herself and the bar as a result of those actions, and taken steps to correct her behavior.

This leads me to the second reason I would dismiss the KBA's charges against Gentry: no purpose apart from punishment would be served by imposing further sanctions against her.  The ABA Standards for Imposing Lawyer Sanctions states that "[t]he purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."[25]  In addition, the annotation to that standard directs that "the punishment of lawyers is not the purpose of lawyer disciplinary sanctions."

Gentry's removal from the bench and the subsequent steps she took to correct her behavior have fully served the public-protecting goals of imposing lawyer sanctions.  All of the misconduct that the KBA seeks to sanction was either a misuse of Gentry's power as a judge, or a misguided attempt to keep her position as a judge after the JCC initiated its investigation.  Consequently, her removal foreclosed any possibility that the same misconduct could reoccur any time in the near future.  Indeed, Gentry has no history of prior discipline

---

[24] *Id.* at 216.

[25] ABA Standards § 1.1.  *See also Ky. Bar Ass'n v. James*, 575 S.W.3d 687, 693 (Ky. 2019).

12

with the KBA. And, according to her answer to the KBA's charge, "[s]ince her removal from office, [she] has practiced law on a regular and steady basis, including appearances in several different courts on a variety of matters, and all without incident or sanction of any kind." This correction in behavior is no doubt due, at least in part, to Gentry addressing the two detrimental factors that contributed to her misconduct: her relationship with Penrose and her alcohol use disorder.

After her removal from the bench, Gentry ended her relationship with Penrose, a minister from her church, whose influence contributed to her poor judgment. More importantly, Gentry has taken every step that we expect lawyers of this Commonwealth to take to address her alcohol use disorder. Gentry has acknowledged that she is an alcoholic and that she was actively abusing alcohol during the period of time that her misconduct occurred. After her removal, she entered into an alcohol treatment program through KYLAP and began attending AA meetings. Her treatment includes attending weekly therapy sessions, attending at least three AA meetings per week, and submitting to random drug screenings. She also works with a KYLAP monitor to ensure her compliance and an AA sponsor to assist her in working through the twelve-step recovery plan inherent to that program. The mental health professional that she sees for therapy reported in an official letter that

> Ms. Gentry has been compliant with all treatment recommendations and has completed all homework as assigned. She has met with a medical doctor and been prescribed psychotropic medication as recommended. I have seen tremendous growth during the course of her treatment.

13

[. . .]

> Ms. Gentry is active in her treatment of her alcohol use disorder. Ms. Gentry reports that she attends three AA meetings weekly and is currently working with an AA sponsor. I contacted her sponsor who related that Ms. Gentry is working her program and is continuously working on the 12 steps of the AA program. Ms. Gentry completes random drug testing 1 to 2 times per month and also meets with her KYLAP monitor on a monthly basis as well as speaking with her weekly.

Based on the foregoing, I fail to see how suspending Gentry for a period of four years will "protect the public and the administration of justice from [a lawyer] who [has] not discharged, will not discharge, or [is] unlikely properly to discharge [her] professional duties to clients, the public, the legal system, and the legal profession." Gentry's prior removal from office has already accomplished this goal by removing her ability and motivation to repeat her previous misconduct and by forcing her to confront her judicial misconduct and the undue influence that her alcoholism and Penrose had on her behavior. I consequently do not believe suspending her for four years would serve any purpose other than punishment.

Additionally, a four-year suspension seems excessive in relation to Gentry's misconduct. In the first place, four-year suspensions are rarely imposed in attorney discipline cases. By my count, only ten cases in the last thirty-two years involved a four-year suspension. And, again, while I in no way endorse Gentry's behavior, it appears that the misconduct involved in those cases was much more egregious than the behavior the KBA now seeks to punish. Over half of those cases involved criminal conduct such as: driving under the influence of alcohol, second-degree assault, reckless driving, and

14

speeding;[26] income tax evasion;[27] reckless homicide;[28] perjury;[29] possession of a forged instrument and drug offenses;[30] and abuse of the public trust by misappropriating funds from the Master Commissioner's account.[31] The remaining cases involved: an employee of a county attorney's office that participated in a kickback scheme to reduce the county attorney's campaign debts;[32] an attorney with a history of prior discipline who commingled client funds, created a conflict of interest by including release-of-liability provision in a contract with a client, exhibited complete lack of diligence, inadequate communication, and failure to obey court orders, and failed to inform a client about the dismissal of a case;[33] an attorney that lied to a client twice about

---

[26] *Gordiner v. Ky. Bar Ass'n*, 408 S.W.3d 78, 79 (Ky. 2013).

[27] *Ky. Bar Ass'n v. Hickey*, 31 S.W.3d 434, 434 (Ky. 2000).

[28] *Tejeda v. Ky. Bar Ass'n*, 456 S.W.3d 405, 406 (Ky. 2015).

[29] *Ky. Bar Ass'n v. Lyon*, 181 S.W.3d 554, 554 (Ky. 2005) (imposing a four year and nine-month suspension). I acknowledge that Gentry admitted she lied to the JCC while under oath. However, in *Lyon*, the perjury committed by the attorney was in district court in relation to a will. *Id.* at 555. Lyon identified the will in court and testified that he witnessed its execution; in reality the will was a forgery. *Id.* Thus, Gentry's perjury is distinguishable because, while it was clearly inappropriate, there was no risk of legal harm to a client.

[30] *Wade v. Ky. Bar Ass'n*, 498 S.W.3d 783, 784-85 (Ky. 2016) (imposing a four year and six-month suspension).

[31] *Ky. Bar Ass'n v. Chenault*, 600 S.W.3d 247, 248 (Ky. 2018).

[32] *Ky. Bar Ass'n v. Huffman*, 908 S.W.2d 347, 347 (Ky. 1995).

[33] *Ky. Bar Ass'n v. Keeney*, 562 S.W.3d 276, 278-79 (Ky. 2018).

whether his complaint had been filed in court;[34] and an attorney who failed to return several unearned client fees after closing his firm.[35]

I simply disagree that Gentry's misconduct in this case is comparable enough to warrant a four-year suspension. Further, it goes without saying that in all of the foregoing cases the attorneys were being sanctioned in the first instance, not for a second time as with Gentry. For all of the foregoing reasons, I would dismiss the KBA's charges against Gentry.

Conley and VanMeter, JJ., join.

ENTERED: April 28, 2022.

_____
CHIEF JUSTICE MINTON

---

[34] *Ky. Bar Ass'n v. Reed*, 798 S.W.2d 955, 955 (Ky. 1990). It should be noted that Reed had three previous suspensions prior to the four-year suspension. *Id.*

[35] *Ky. Bar Ass'n v. Whitehead*, 302 S.W.3d 66, 67-68 (Ky. 2010) (imposing reciprocal discipline from Arizona).